IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

PATRICIA L. HUMPHRIES                                                                PLAINTIFF

v.                              Civil No. 09-2003

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                       DEFENDANT

### MEMORANDUM OPINION

Plaintiff, Patricia Humphries, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### Procedural Background

The plaintiff filed her applications for DIB and SSI on October 10, 2006, alleging an onset date of September 20, 2006, due to mental problems. (Tr. 80, 99). Her application was initially denied and that denial was upheld upon reconsideration. (Tr. 50-60). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). An administrative hearing was held on July 3, 2008. (Tr. 5-22). Plaintiff was present and represented by counsel.

At this time, plaintiff was 26 years of age and a possessed a high school education. (Tr. 8). She had no past relevant work as a personal care assistant and cashier. (Tr. 151).

AO72A
(Rev. 8/82)

On July 25, 2008, the ALJ found that plaintiff's mood disorder was severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 42-44). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is moderately limited in the ability to understand, remember, and carry out complex instructions; respond appropriately to usual work situations and routine work changes; and, interact appropriately with co-workers, supervisors, and the public. He then defined moderately limited as more than a slight limitation, but the person could still perform in a satisfactory manner. (Tr. 46). With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a production worker, sewing machine operator, and maid/house cleaner. (Tr. 48).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on November 14, 2008. (Tr. 1-3). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 7, 8).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the

Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

**Discussion**

After reviewing the medical evidence of record, the undersigned finds that the ALJ's RFC is not supported by substantial evidence. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of

3

his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Records indicate that plaintiff had a history depression, anxiety, bipolar disorder, and violent episodes. Prior to the relevant time period, plaintiff was treated for anxiety and depression. (Tr. 197, 198, 200, 204, 205). In September 2006, plaintiff testified that she was fired from her job at a retirement home as a personal care assistant after she became upset while assisting a resident. (Tr. 222-224). She was diagnosed with bipolar disorder and prescribed Lorazepam and Topamax. At this time, it was noted that plaintiff had tried many anti-depressants/anti-anxiety medications to no avail. Later records indicate that she was prescribed Lorazepam, Seroquel, and Trazodone, but her symptoms still were not controlled. (Tr. 213-221). Plaintiff was then prescribed Lithium to which she responded well. (Tr. 212, 264, 271). However, she developed hypothyroidism secondary to the Lithium and had to discontinue it. (Tr. 262-263). Alternatively, plaintiff was prescribed Lamictal and Gabapentin. Treatment notes indicate that this medication did not treat her symptoms as effectively as Lithium. The doctor noted a depressed and less stable mood and plaintiff reported an uneven mood with difficulty

4

sleeping. (Tr. 260-263 ). As such, it is not clear to the undersigned that plaintiff's condition was controlled via medication.

Further, on February 20, 2007, plaintiff underwent a mental status diagnostic evaluation with Dr. Kathleen Kralik. (Tr. 230-240). The ALJ gave Dr. Kralik's assessment a great deal of weight. However, we do not find that Dr. Kralik's report was entitled to significant weight. It is riddled with inconsistencies. In the assessment, Dr. Kralik herself stated that she had insufficient data upon which to conclude or even imply whether plaintiff's symptoms were long-term, permanent, or would preclude her from all forms of occupational functioning. Having said this, Dr. Kralik goes on to conclude that plaintiff's symptoms had most likely been longstanding and would continue to persist. Given plaintiff's personality issues and the ongoing risk of substance abuse, her clinical prognosis was noted to be guarded, but Dr. Kralik stated that plaintiff's prognosis for occupational functioning was as good as when plaintiff was successfully employed full-time prior to September 2006. However, in the same breath, she noted that any data before or immediately surrounding plaintiff's September 2006 employment termination would be more helpful than her own assessment in determining whether plaintiff's level of occupational functioning had declined following her termination. (Tr. 230-240). Dr. Kralik then she assessed plaintiff with a global assessment of functioning ("GAF") score of 21-30 based on her ongoing potential for violence associated with her anger management difficulties and borderline personality disorder features; the lack of an effective medication regime to manage those features; and, her current state of both unemployment and doing little in the line of age-appropriate adult responsibilities in the home. We note that a GAF of 21-30 is indicative of a serious impairment in communication or judgment, an inability to function in almost all areas,

5

or behavior that is considerably influenced by delusions or hallucinations. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000).

In one breath, Dr. Kralik considered her assessment to be a valid and typical sample of plaintiff's functioning relative to consideration of her mental/cognitive status as it impacted occupational functionality. In another, she pointed out the discrepancies in plaintiff's performance on the mental status exam, her apparent evasiveness in answering questions, and her seeming lack of effort on the mental status exam. At one point, Dr. Kralik even stated that plaintiff's difficulties on the formal mental status exam may have been related to some situational anxiety, as plaintiff did seem nervous. Plaintiff was purportedly on the verge of tears when "blatantly doing poorly on the mental status exam tasks." When plaintiff could not recite her home address and phone number, Dr. Kralik purportedly cautioned plaintiff about malingering. At the end of the day, however, Dr. Kralik concluded that there was no evidence of malingering and/or exaggeration. In the same sentence, she recited plaintiff's evasiveness and seeming lack of effort on the mental status exam.

It seemed evident to Dr. Kralik that plaintiff exhibited significant emotional and behavioral regulation issues. However, she found plaintiff's symptoms to be more consistent with personality disorder and prefrontal lobe-type problems than bipolar episodes. As such, Dr. Kralik diagnosed plaintiff with polysubstance dependence, intermittent explosive disorder, cognitive disorder not otherwise specified, mood disorder not otherwise specified, and personality disorder not otherwise specified (with prominent borderline personality features; rule out narcissistic and/or parasitic antisocial). These diagnoses were prefaced with the following statement "[i]mpressions given in this section are based on the information available here and

6

are considered preliminary/provisional. For a more definitive diagnosis, a more formalized, comprehensive psychological assessment would be required." She also noted that plaintiff did appear to suffer from an intermittent explosive disorder, though it was not clear whether this was a learned behavior or secondary to her organic impairments. Dr. Kralik believed that this distinction would be critical to determining the extent to which plaintiff could control herself in a workplace setting. The ALJ adopted Dr. Kralik's conclusions, but dismissed her GAF assessment citing Dr. Kralik's own statements that plaintiff did not always seem forthcoming in her responses to interview items and did not appear to be putting forth her best effort on mental status exam tasks. However, given the vast inconsistencies in Dr. Kralik's assessment and her own statement that she had insufficient information upon which to base her conclusions and the fact that Dr. Kralik's assessment is the only assessment completed by a doctor who actually examined the plaintiff, we believe that remand is necessary to allow the ALJ to develop the record further regarding plaintiff's mental limitations. On remand, the ALJ should order another mental status examination with a different doctor. He should also address interrogatories to plaintiff's treating doctors and her counselor at WACGC, asking them to review plaintiff's medical records during the relevant time period; complete an RFC assessment regarding plaintiff's capabilities during the time period in question; and, give the objective basis for their opinion, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 0788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

7

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 26th day of January 2010.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)